No. 35 July 30, 2026 473

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

NICHOLAS FEDERICO,
*Petitioner on Review.*

(CC 19CR73389) (CA A180247) (SC S071640)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 19, 2025.

Anne Fujita Munsey, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Joanna Hershey, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

GARRETT, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____
* Appeal from Marion County Circuit Court, Erious C. Johnson, Jr., Judge (Judgment) and Lindsay R. Partridge, Judge (Amended Judgment). 336 Or App 489 (2024) (nonprecedential memorandum opinion).

**GARRETT, J.**

In this criminal case, defendant, a former high-school teacher, was convicted of sexual offenses involving a 17-year-old student, J. Defendant argues that he was denied a fair trial because of statements by the prosecutor at two different points in the proceeding. First, during defense counsel's cross-examination of J, the prosecutor interjected with references to facts not in evidence—including a search warrant for defendant's office, the fruits of which the trial court had suppressed—and accused defense counsel of making "false" statements. That exchange led to a prolonged interruption of the proceedings and to the jury being excused for nearly half an hour. The trial court denied defendant's motion for a mistrial and instructed the jury to disregard what had occurred. Second, during his closing rebuttal argument, the prosecutor urged the jurors to think about how they would justify a not guilty verdict to their "loved ones." Defendant did not object at the time but argues on appeal that those comments constituted plain error that required a mistrial.

The Court of Appeals affirmed. *State v. Federico*, 336 Or App 489 (2024) (nonprecedential memorandum opinion). For the reasons explained below, we conclude that defendant was denied a fair trial. We reverse and remand to the trial court for further proceedings.

## I.   BACKGROUND

The facts relevant on review are largely procedural. The state charged defendant with sexual offenses based on his alleged relationship with a 17-year-old student at the high school where defendant worked. Before trial, defendant filed motions *in limine* to suppress a range of evidence seized from his person, house, truck, and office at the high school. As relevant on review, the trial court granted the motion as to most evidence seized pursuant to the warrant, including all items seized from defendant's office, which included documents, letters, and photographs. The trial court also suppressed all but two items seized from defendant's person, house, and truck, concluding that the warrant was generally overbroad, relied on stale information, and failed to establish a nexus connecting the commission of a crime to the evidence sought and the location to be searched.

At trial, J testified that, when she was 17 years old, she and defendant had sex several times, including at defendant's home, in hotel rooms, in his truck, and in his office at the school. Defendant's theory was that J was lying and had fabricated the allegations to extort money from him. Defendant did not testify.

A. *Prosecutor's Comments During Defendant's Cross-Examination of J*

During the state's direct examination of J, she testified that she had had oral sex with defendant in his office. On cross-examination, defense counsel asked her if she had previously told anyone about that specific act, implying that she was not being truthful. Specifically, defense counsel said, "This is a sexual encounter that nobody has heard of, for the last three years. I'm trying to figure out if you're developing the story as it goes, or if we're just having a faulty memory." That was immediately followed by this exchange:

"[PROSECUTOR]:   Your Honor, I would question * * * question in aid of objection. [J] did you tell law enforcement that you had engaged in sexual

"JUDGE:   Hold on, you will have an opportunity to cross, re-hab or to do whatever. I believe this is [defense counsel's] opportunity to

"[PROSECUTOR]:   I'm sorry Your Honor. I have a question in aid of an objection. Am I allowed to ask a question

"JUDGE:   No[.]

"[PROSECUTOR]:   In reference to object to

"JUDGE:   You will have your time. You will have an opportunity to clarify whatever you'd like in your cross examination [*sic*]. Make your objection and then if I find a basis, I'll let you be heard.

"[PROSECUTOR]:   Your Honor, I don't believe these are facts in evidence. Law enforcement sought and received a search warrant for the office of the high school, in fact, because this witness, this witness articulated that sexual contact happened in the school. And counsel is suggesting that this witness has never said that to anyone which is a false recitation of what occurred.

At that point, the trial court ordered the jury removed from the courtroom. Defendant then moved for a mistrial, arguing that the prosecutor's statements were so prejudicial that the trial court could not "undo" the harm. The trial court questioned the prosecutor, asking him why he could not have waited for redirect and telling him that that "would have been the clean ethical way to do it." After a brief recess, the trial court denied the mistrial motion, explaining, "I don't think whatever happened, was, I don't think the jury picked it up, even me hearing that I don't know that it's anything that prejudices [defendant]'s case."

The jury then returned, 25 minutes after having been removed, and received the following instruction:

> "Jurors, do you remember in my instructions I told [you] as the judge, I'm the gatekeeper. If I say something wasn't supposed to come in, or something you are supposed to ignore, you all are supposed to treat it like it didn't happen. This is one of those times. Whatever the conversation was, just before I asked [the bailiff] to escort you all out, act like it didn't happen. Totally disregard it."

That instruction used wording that defense counsel had requested after his mistrial motion was denied.

B.  *Prosecutor's Comments During Closing Argument*

In closing argument, defense counsel suggested to the jurors that, during deliberations, they vote anonymously so as not to entrench themselves into a particular position. In his rebuttal, the prosecutor told the jury,

> "I also have a suggestion. When you're done deliberating, when you walk out of this courtroom, you are going to be allowed to talk about this case with the people you care about. Think for a moment if you had an elevator ride with someone how you would characterize this case. If your vote is not guilty, I voted that way because, yes there were these text messages, discussing a plan to avoid chlamydia, but; or, yes there were hotel receipts that said exactly; but, and then yeah he was a teacher; but. Or, guilty, teacher, minor, pregnant, chlamydia, NDA, hotel receipts that corroborate when she said it happened, how she said it happened, she described the inside of her house, his house."

The prosecutor concluded his rebuttal by telling the jurors, "I would submit to you that when you go talk to your loved ones about this case, think about how you can explain a non-disclosure agreement, when the cat is already out of the bag. It's because he's guilty." Defendant did not object. The jury found defendant guilty on all counts.

C.   *Court of Appeals Proceedings*

On appeal, defendant assigned error to the trial court's denial of his motion for a mistrial, contending that (1) the prosecutor had referred to facts outside the record, including the existence of a search warrant for defendant's office and J's statements to police related to that warrant; (2) because the jury had heard nothing about the results of that search, the jury would likely have inferred that whatever evidence had been found had been suppressed because of defendant's exercise of his constitutional rights; (3) in telling the jury that defense counsel had made "a false recitation of what occurred," the prosecutor had disparaged counsel's integrity in front of the jury; and (4) the trial court's curative instruction had been "insufficient to un-ring the bell." In a separate assignment of error, defendant argued that the prosecutor's statements in closing constituted plain error under this court's analysis in *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022). Defendant argued that the prosecutor's comments had distorted the burden of proof and had encouraged the jurors to decide the case on an improper basis—how their "loved ones" might view an acquittal—instead of the evidence presented at trial.

The Court of Appeals affirmed defendant's convictions in a nonprecedential memorandum opinion. *Federico*, 336 Or App 489. First, the court held that the trial court did not abuse its discretion in denying defendant's motion for a mistrial, concluding that it was "not clear that the isolated reference" to a search warrant related to defendant's exercise of his constitutional right not to consent to a search. *Id.* at 490-92.[1] Second, the court rejected defendant's argument

---

[1]   Before the Court of Appeals, defendant argued that the prosecutor's reference to a search warrant informed the jury that defendant exercised both his constitutional right not to consent to the search and his constitutional right to suppress evidence seized in violation of the constitution. The Court of Appeals' opinion expressly addressed the first—the right not to consent—but not the

that the prosecutor's comments disparaged defense counsel in front of the jury, concluding that the comment "focused on the potential inaccuracy of a single statement by defense counsel, not defense counsel's general truthfulness or competency." *Id.* at 491 (citing *State v. Knight*, 343 Or 469, 482-83, 173 P3d 1210 (2007)). The court further reasoned that the curative instruction had been within the trial court's range of legally permissible choices. *Id.* at 492. Addressing defendant's challenge to the prosecutor's closing argument, the court held that it was not "'beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial.'" *Id.* (quoting *Chitwood*, 370 Or at 312). The court explained that, although the prosecutor's reference to "loved ones" was "not optimal," it "did not confuse the jury as to which party had the burden of proof." *Id.* (citing *State v. Settlemier*, 333 Or App 179, 181, 551 P3d 995 (2024)).

## II.   ANALYSIS

On review, the parties largely reprise their arguments below. Defendant contends that the trial court was required to grant a mistrial based on the prosecutor's conduct during cross-examination; separately, he reiterates his *Chitwood* argument that the prosecutor's comments during closing argument constituted plain error requiring reversal. Defendant also argues, for the first time on review, that, even if neither instance on its own deprived defendant of a fair trial, they had that cumulative effect. The state responds that, although some of the prosecutor's conduct was improper, neither of the two instances required a mistrial. The state further argues that this court has not adopted the concept of "cumulative error" in this context and that we should not do so here, particularly because defendant did not make that argument before the Court of Appeals.

For the reasons that follow, we conclude that defendant was deprived of a fair trial. We first conclude that the prosecutor's comments during defendant's cross-examination of J were clearly improper and that, under the circumstances, no jury instruction would have sufficed to cure the prejudice to defendant. Exercising our discretion

---

second. *Federico*, 336 Or App at 490. On review in this court, defendant advances only the second argument. Accordingly, we address only that argument.

to reach the second issue, we also conclude—on an independent basis—that the prosecutor's comments during closing argument were sufficiently prejudicial to deny defendant a fair trial.

A.  *Prosecutor's Conduct During Cross-Examination*

1.  *Whether the prosecutor's comments prejudiced defendant's case and, if so, to what extent*

Article I, section 11, of the Oregon Constitution guarantees a criminal defendant the right to a "public trial by an impartial jury[.]" That means "a trial by a jury that *** is influenced in making its decision only by evidence produced at trial and legal standards provided by the trial court." *State v. Amini*, 331 Or 384, 391, 15 P3d 541 (2000). The constitution guarantees the right to a *fair* trial, which means, among other things, that counsel must not suggest to the jury that its decision should be influenced by matters outside the trial record. "Every litigant is entitled to a fair trial, and this result cannot be achieved if counsel is permitted to make statements to the jury of facts not testified to by any witness nor admissible in evidence." *Kuehl v. Hamilton*, 136 Or 240, 249, 297 P 1043 (1931); *see also Chitwood*, 370 Or at 314-15 (applying that rule in a criminal trial).[2]

Whether to grant a motion for a mistrial is "addressed to the sound discretion of the trial judge." *State v. Jones*, 242 Or 427, 433, 410 P2d 219 (1966). That is because the trial judge "is in the best position to assess and to rectify the potential prejudice to the defendant." *State v. Farrar*, 309 Or 132, 164, 786 P2d 161, *cert den*, 498 US 879, 111 S Ct 212, 112 L Ed 2d 171 (1990). "Even if we find a prosecutor's conduct to be improper, we will not find an abuse of discretion unless the effect of that conduct is to deny a defendant a fair trial." *State v. Bowen*, 340 Or 487, 508, 135 P3d 272 (2006). A curative instruction is often adequate to remedy the "presumably harmful effect" of improper testimony or conduct by counsel. *State v. Wederski*, 230 Or 57, 60, 368 P2d 393 (1962). There are, however, "cases in which the testimony which the

---

[2] We understand defendant to be making a claim under both the state and federal constitutions. Because we conclude that he was denied a fair trial under the state constitution, we need not address his federal claim.

jury is instructed to 'disregard' is so prejudicial that, as a practical matter, 'the bell once rung, cannot be unrung' by such an admonishment." *State v. Jones*, 279 Or 55, 62, 566 P2d 867 (1977). The dispositive question is "whether the purportedly curative instruction was sufficient to unring the bell." *State v. White*, 303 Or 333, 342, 736 P2d 552 (1987). Because of the importance of a criminal defendant's right to have their guilt determined solely on the basis of evidence at trial, this court has explained that, as a "basic rule," "a prosecutor may not make a statement to a jury that implies that additional evidence exists but cannot be presented because of 'our laws and rules of the court,' [*State v.*] *Newburn*, 178 Or [238], 241-42, [166 P2d 470 (1946)], or the 'rules of evidence, *Wederski*, 230 Or at 61.'" *State v. Banks*, 367 Or 574, 585, 587, 481 P3d 1275 (2021). Several cases illustrate the rule.

In *Newburn*, the prosecutor told the jury that "*out of all the facts*" in the state's possession, it could "*only present such evidence as is admissible.*" 178 Or at 241 (emphases in *Newburn*; internal quotation marks omitted). In *Wederski*, the prosecutor told the jury that the state's expert witness had "sat through the entire trial" ready to testify in support of its case but did not because "the right situation didn't present itself[.]" 230 Or at 60 (internal quotation marks omitted). Finally, in *Banks*, the prosecutor told prospective jurors that, because of "the rules of evidence," the jury was "not going to have all the facts." 367 Or at 576 (internal quotation marks omitted). In all three cases, this court held that the prosecutors' comments were improper and required reversal. *Newburn*, 178 Or at 241-42; *Wederski*, 230 Or at 59-60; *Banks*, 367 Or at 589. Such comments, we explained, are "prejudicial to [a defendant's] rights" because they inject "extrinsic and prejudicial matter [into the trial] which has no basis in the evidence," *Newburn*, 178 Or at 241-42, and are "an open invitation for the jury to speculate[,]" *Wederski*, 230 Or at 61.

In *Banks*, we distilled the rationale and explanations from *Newburn* and *Wederski* into "the basic rule" stated above. 367 Or at 585-87. We explained that, because the state is the plaintiff in a criminal case, "a prosecutor's

suggestion that the state has more evidence * * * will likely be understood as a suggestion that the state has more *incriminating* evidence than it can present." *Id.* at 588 (emphasis in original). We further explained that such comments were improper and prejudicial even if they did not "identify particular facts that the prosecutor could not present." *Id.* Thus, to reiterate, a prosecutor's statement is prejudicial even if it only "implies that additional evidence *exists* but cannot be presented[.]" *Id.* at 585 (emphasis added).

With those principles in mind, we return to what happened at the trial in this case. To repeat, after defense counsel asked J whether she had ever told anyone about having oral sex with defendant in his office—suggesting that she was either "developing the story as it goes" or had a "faulty memory"—the prosecutor engaged in an extended interruption. He began by posing a question directly to J, in the middle of defendant's cross-examination and without the trial court's permission, under the guise of a "question in aid of objection." After the trial court admonished him not to question the witness and instructed him to simply state his objection, the prosecutor said:

> "Your Honor, I don't believe these are facts in evidence. Law enforcement sought and received a search warrant for the office of the high school, in fact, because this witness, this witness articulated that sexual contact happened in the school. And counsel is suggesting that this witness has never said that to anyone which is a false recitation of what occurred."

Thus, in the span of one minute, the prosecutor disrupted defendant's cross-examination by attempting to ask his own questions of J, accused defense counsel of making "false" statements, and referred to facts that had not been made known to the jury, including that police had obtained a search warrant for defendant's office on the basis of statements made to them by J.

We focus, first, on the references to facts not in the record. The state concedes that the prosecutor should not have referred to the warrant but argues that it would require the "stacking" of inferences to find prejudice. The state contends that it is not even clear that the jury heard

the comments; that the comments did not directly imply the existence of "incriminating" or inculpatory evidence; and that, to infer that evidence existed outside the record, the jury would have needed to know more about how police obtain search warrants and about how and why evidence is suppressed.

        We readily accept the state's concession that the comments were improper, but we disagree with the state that they were not prejudicial. They were improper for reasons that should be obvious: The prosecutor expressly referred to the existence of a search warrant for defendant's office and to statements that J had made to police in support of that warrant, even though that information was not in the record because the trial court had entirely suppressed the fruits of that search. The jury should never have heard about the warrant to search defendant's office. The state was not entitled to derive a benefit at trial from evidence that the trial court had suppressed, and that includes any benefit to be derived from giving the jury a reason to speculate that such evidence might exist. "The exclusionary rule is constitutionally mandated and serves to vindicate a defendant's personal right to be free from unreasonable searches and seizures." *State v. Unger*, 356 Or 59, 67, 333 P3d 1009 (2014).

        We now consider the statements' prejudicial effect. To begin, we cannot accept the state's suggestion that the prosecutor's comments might not have been heard by the jury. We acknowledge, as do the parties, that trial courts are generally in the best position to make such determinations, and the trial court in this instance remarked that "I don't think the jury picked it up." On this record, however, we do not defer to that statement as establishing that the jury did not hear what the prosecutor said. First, as the state conceded at oral argument, the statement that the jury might not have "picked it up" is capable of more than one interpretation. It is possible that the trial judge believed that the jury had not heard the objectionable comments, but it is also possible that the trial judge meant to indicate that he did not believe that the jury had appreciated their import. Second, the audio recording of trial reflects that it is highly likely that jurors heard the prosecutor's comments. The prosecutor began, as we have noted, by asking a question directly to J,

which suggests that he intended for the jury to hear what he was saying. As the exchange continued, the prosecutor did not request to confer with the court outside the presence of the jury, as is common. He delivered his comments slowly, assertively, and with clear enunciation and emphasis on particular words, notably "this witness," "high school," "counsel," and "false." He made a point of interjecting to make those comments, and we see no reason to presume that the jury suddenly stopped paying attention just as he did so.

The state next argues that the comments could have caused more than "minimal prejudice" only if the jury had reason to infer that the evidence outside the record was "incriminating" and "qualitatively different and more inculpatory" than the evidence in the record. That proposition of law is not correct. As noted, in *Banks*, we explained that, because the state is the plaintiff in a criminal case, "a prosecutor's suggestion that the state has more evidence will likely be understood as a suggestion that the state has more *incriminating* evidence than it can present." *Id.* at 588 (emphasis in original). Here, the prosecutor introduced specific facts not in evidence (the existence of the search warrant and the fact that J had made statements to police about sexual contact in defendant's office), and those comments not only themselves presented evidence that could be understood as incriminating, but easily implied to the jury that *additional* evidence—whatever was found pursuant to the warrant—might exist. As defendant points out, his trial counsel did not—because he could not—tell the jury that no evidence had been found in the office. From the silence on that point, jurors could naturally have inferred that police had found evidence there. Once the jury drew any inference that such evidence existed, *Banks* instructs that the jury likely would have assumed that the evidence was incriminating.[3]

---

[3] Defendant contends that the problem was further exacerbated because the prosecutor's comments would have led the jury to infer not only that other evidence existed, but that the reason such evidence was not presented was because defendant had exercised his constitutional right to suppress the evidence. *See, e.g.*, *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600 (1977) ("There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury."). We agree with the state that that theory of prejudice is more of a stretch. The prosecutor's comments did not refer to any actions, statements, or omissions

Finally, the prejudicial effect of the prosecutor's statements must also be considered in light of his assertion that defense counsel was presenting a "false recitation" of the facts. The Court of Appeals reasoned that that statement "focused on the potential inaccuracy of a single statement by defense counsel, not defense counsel's general truthfulness or competency." *Federico*, 336 Or App at 491. We agree that, in a vacuum, a single objection that opposing counsel had said something "false" would be unlikely to cause significant or incurable harm. This case is distinguishable in that respect from the two cases on which defendant relies, *Knight*, 343 Or at 484 (addressing "persistent" derogatory comments that "inevitably affected the jury's own perception of the competence and zealousness of [the] defendant's trial counsel and, ultimately, of the strength of the defendant's case[]"), and *In re Ochoa*, 342 Or 571, 574, 157 P3d 183 (2007) (concluding that, in a judicial disciplinary case, a judge who had "repeatedly admonished and belittled" defense counsel in front of the jury "prejudiced the defendant's right to a fair trial.").

In another respect, however, the prosecutor's reference to defense counsel's "false recitation" exacerbated the prejudicial effect of the prosecutor's references to evidence outside the record. During the cross-examination, defense counsel was attempting to cast doubt on whether sexual contact had occurred in defendant's office by suggesting that J had never reported it. The prosecutor's comments about a search warrant informed jurors that there was more to the story than they had been told. Asserting in the same speaking objection that defense counsel was engaged in a "false recitation" would have added fuel to that speculative fire.

To be clear, if the prosecutor thought that defense counsel was misrepresenting the facts and misleading the jury by asserting that J had told no one about the alleged

---

by defendant. *But see, e.g.*, *Wederski*, 230 Or at 60 (reasoning that the prosecutor's reference to a lack of "denial" by the defendant could have been construed as an indirect comment on the defendant's exercise of his right to remain silent). The state is correct that the number of inferential steps that the jury would have had to take to interpret the prosecutor's statements as a comment on defendant's exercise of his constitutional rights is greater than in *Wederski*. As we have already explained, however, the statements were prejudicial for other reasons.

sexual contact in defendant's office, the prosecutor had options. He could have objected, asked to confer with the trial court outside the presence of the jury, and sought an appropriate remedy. *See State v. Strain*, 374 Or 783, 792, 583 P3d 1002 (2026). What he was not entitled to do was respond to defense counsel's examination by interposing his own testimony in the form of an improper speaking objection that invited the jury to speculate about the existence of additional evidence.

2.    *Whether the prejudice could have been cured*

For the reasons explained above, we conclude that the prosecutor's comments were improper and we reject the state's argument that they were unlikely to have had any significant prejudicial effect. It remains to consider whether the trial court erred in denying defendant's motion for a mistrial.

"Even if we find a prosecutor's conduct to be improper, we will not find an abuse of discretion unless the effect of that conduct is to deny a defendant a fair trial." *Bowen*, 340 Or at 508. That is because, generally, a curative instruction is adequate to obviate the "presumably harmful effect" of prosecutorial misconduct. *Wederski*, 230 Or at 60. Jurors are assumed to have followed their instructions, absent an "overwhelming probability" that they would be unable to do so. *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990) (citing *Greer v. Miller*, 483 US 756, 766 n 8, 107 S Ct 3102, 97 L Ed 2d 618 (1987)). There are, however, "cases in which the testimony which the jury is instructed to 'disregard' is so prejudicial that, as a practical matter, 'the bell once rung, cannot be unrung' by such an admonishment." *Jones*, 279 Or at 62. The dispositive question is "whether the purportedly curative instruction was sufficient to unring the bell." *White*, 303 Or at 342.

In *Jones*, the prosecutor persistently suggested that the defendant, who was on trial for rape, had committed rape in the past. To that end, the prosecutor called a police officer to testify that another witness had told the officer that the defendant had committed rape many times before. 279 Or at 61-62. The trial court denied the defendant's motion

for a mistrial and instructed the jury "to disregard the last statement made by the *** witness" and "to erase it from your mind and pay no attention to it." *Id.* at 62 (internal quotation marks omitted). This court reversed and remanded for a new trial, concluding that the comments were so prejudicial that the "defendant was denied a fair trial." *Id.* at 63. We emphasized that the prosecutor—"knowing that he had no proof"—nonetheless "persisted" in making the suggestions, that calling the officer to testify on a collateral matter was "clearly improper," and that the resulting prejudice—in a trial for rape where credibility weighed significantly—was "pervasive." *Id.* We concluded that the case was one in which the testimony that the jury was instructed to disregard was "so prejudicial" that "the bell once rung, [could not] be unrung." *Id.* at 62 (internal quotation marks omitted).

In *White*, the prosecutor remarked in his opening statement that the defendant had refused to testify in his codefendant's trial. 303 Or at 336. The trial court denied the defendant's motion for a mistrial and instructed the jury that "that matter [was] not relevant" and that "[i]t's not to be taken by you as any evidence of the case or have any place in the case." *Id.* at 338 (internal quotation marks omitted). This court reversed and remanded for a new trial, concluding that the prosecutor's comments were "so prejudicial that a mistrial should have been declared." *Id.* at 335. The court noted that the prosecutor "deliberately chose to offend the rules" and that the rule in question was a well-established, constitutionally protected right. *Id.* at 340-41. This court explained that, "[w]here prosecutorial misconduct would prevent a fair trial," the trial judge "must do something more than blandly instruct the jury to forget that it has just seen a white bear." *Id.* at 343 (citing *Lakeside v. Oregon*, 435 US 333, 345, 98 S Ct 1091, 55 L Ed 2d 319 (1978) (Stevens, J., dissenting)).

*Bowen* is an example of when a tailored jury instruction was sufficient to cure prejudicial comments. 340 Or 487. Prompted by the prosecutor, the defendant admitted to having been convicted of manslaughter. *Id.* at 502. That conviction, however, was inadmissible because it exceeded the 15-year window established by OEC 609(3)(a). *Id.* The

trial court denied the defendant's motion for a mistrial and instructed the jury:

> "'Members of the jury, convictions can be used solely for the purpose of testing someone's credibility. The law says that one may only be asked questions on convictions that have occurred within the last fifteen years. So you are to disregard any convictions or any answers that reflect a conviction that occurred prior to fifteen years from this date \*\*\*.'"

*Id.* (ellipses in *Bowen*). This court affirmed the convictions, holding that the trial court's instructions "were sufficient to protect against prejudice to [the] defendant[.]" *Id.* at 511. Central to our conclusion was that the curative instruction in *Bowen* "was significantly stronger" than that in *White*, that the record did not establish that the prosecutor had deliberately offended the rules, and that *Bowen* involved a rule of evidence, whereas *White* involved the defendant's exercise of a constitutional right. *Id.* at 510-11. Based on that third distinction, we explained that "the presumably harmful effect of the prosecutor's conduct in this case was not of such magnitude that we can conclude that a proper curative instruction could not ameliorate any potential prejudice." *Id.* at 511.

*Jones*, *White*, and *Bowen* provide several guiding principles. As *White* illustrates, prosecutorial misconduct that offends a constitutional rule is more difficult to cure than conduct that offends an evidentiary rule. Such conduct may be curable, but doing so requires more than "blandly" instructing the jury to disregard the prejudicial comment. *Bowen* illustrates that careless or inadvertent prosecutorial misconduct that offends an evidentiary (as opposed to a constitutional) rule might be curable with a jury instruction tailored to the specific prejudice resulting from the misconduct. On the other hand, *Jones* illustrates that deliberate, persistent, and inflammatory comments may be so prejudicial as to deny the defendant a fair trial, regardless of whether the conduct implicates an evidentiary or a constitutional rule.

With those principles in mind, we conclude that defendant was denied a fair trial. Although the prosecutor's comments during cross-examination were not pervasive and occurred during one extended exchange, those comments

were highly improper, deliberate, and prejudicial. The prosecutor interrupted defense counsel's cross-examination by interjecting with his own question of J, without leave of the court. He then made a speaking objection that referred to facts not in evidence—including a search warrant, the results of which, as to the office, had been entirely suppressed—and accused defense counsel of making a "false recitation of what occurred." In addition, the prejudice in this case is of a constitutional dimension. Although we decline on this record to infer that the prosecutor acted with the intent to comment improperly on defendant's exercise of his constitutional rights, the express reference to facts outside the record (which, here, invited speculation that additional evidence might exist) intruded on defendant's core right to have the verdict based solely on the evidence admitted at trial.

Moreover, after the prosecutor finished his comments, the jury was excused for 25 minutes, with no instruction or other guidance from the trial court regarding what to do—or not do—during that time. Jurors therefore had a lengthy opportunity to consider what they had just heard and to speculate about what was found in defendant's office and why they had not been presented with such evidence. We conclude that, under those circumstances, no subsequent jury instruction would have been sufficient to unring the bell, much less the general and bland instruction that the trial court gave here to simply "disregard" what had occurred.[4] Accordingly, defendant's motion for a mistrial should have been granted.

B.  *Prosecutor's Closing Argument*

Having concluded that the trial court erred in failing to grant a mistrial based on the prosecutor's conduct during defendant's cross-examination, we could end our discussion. Because defendant will be entitled to a new trial, however, we exercise our discretion to address what happened during

---

[4] We acknowledge the state's point that defendant himself requested the wording of that instruction after the mistrial motion was denied. In a closer case, that would complicate our analysis by requiring us to determine whether a differently worded instruction could have cured the harm, and, if so, whether defendant invited error by requesting wording that was inadequate. In this case, however, we are persuaded that the circumstances required defendant's motion for mistrial to be granted because no curative instruction would have been sufficient.

closing argument. As we will explain, what transpired there is an independent basis for concluding that defendant was denied a fair trial. We take this opportunity to explain why that is so, to lessen the risk that the same conduct will recur.[5]

As noted, the prosecutor made the following statement the jury in closing:

> "When you're done deliberating, when you walk out of this courtroom, you are going to be allowed to talk about this case with the people you care about. Think for a moment if you had an elevator ride with someone how you would characterize this case. If your vote is not guilty, I voted that way because, yes there were these text messages, discussing a plan to avoid chlamydia, but; or, yes there were hotel receipts that said exactly; but, and then yeah he was a teacher; but. Or, guilty, teacher, minor, pregnant, chlamydia, NDA, hotel receipts that corroborate when she said it happened, how she said it happened, she described the inside of her house, his house. *** I would submit to you that when you go talk to your loved ones about this case, think about how you can explain a non-disclosure agreement, when the cat is already out of the bag. It's because he's guilty. It's because he's guilty."

Defendant did not object, move for a mistrial, or request a curative instruction. On review, relying on the plain error analysis that this court developed in *Chitwood*, he argues that the prosecutor's comments were so prejudicial as to deny him a fair trial.

In *Chitwood*, this court held that, on plain error review,

> "it is not enough for a defendant to show that a prosecutor's comments were improper; a defendant asserting plain error must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial."

---

[5] *See Woodard v. Pacific F. & P. Co.*, 165 Or 250, 256-57, 106 P2d 1043 (1940) ("'Where the court bases its decision on two or more distinct grounds, each ground so specified is, as much as any of the others, one of the grounds, a ruling upon questions involved in the case, and not mere dictum.'" (Quoting both *King v. Pauly*, 159 Cal 549, 555, 115 P 210, 212 (1911), and *Coombes v. Getz*, 217 Cal 320, 329, 18 P2d 939, 943 (1933) (some internal quotation marks omitted))).

370 Or at 312. *Chitwood* held that two of the prosecutor's comments in closing rebuttal argument met that standard. First, the prosecutor argued that, in contrast to allegations that the jurors had heard about in *voir dire* regarding a prospective juror—which "washed out at the forensic interview stage" because they were "false[]"—the allegations against the defendant were "not false." *Id.* at 308 (internal quotation marks omitted). That statement, we explained, was impermissible because it referred to facts not in evidence and encouraged the jury to decide the case on an improper basis. *Id.* at 314-15. Second, the prosecutor told the jury, "if you determine that [the] defendant should not reside with an adolescent girl," the state has proved its "case beyond a reasonable doubt." *Id.* at 309 (internal quotation marks and brackets in *Chitwood* omitted). We explained that that statement was improper because it "distorted the burden of proof" and "appealed to the jurors' moral sensibility about an irrelevant circumstance"—that is, whether the defendant should not reside with an adolescent girl. *Id.* at 316-17. Concluding that the error was grave, we exercised our discretion to correct it. *Id.* at 328-29.

We based our holding on four related factors. First, the comments touched on a "fundamental" principle: The state must "prove every element of the offense beyond a reasonable doubt[.]" *Id.* at 317. Second, coming at the end of closing rebuttal, they had the "the power of recency," making them "the last thing the jury heard" and "exacerbat[ing] the risk" of prejudice. *Id.* at 317-18. Third, the prosecutor "compounded the error" by "giving the jury permission to ignore [the] defendant's fundamental right to proof beyond a reasonable doubt[.]" *Id.* at 320-21. Fourth, the case was "close," a "credibility contest" between defendant and the victim. *Id.* at 321.

In contrast, *State v. Perez* concluded that three comments in the prosecutor's closing argument did not constitute plain error "because there was more than one way that the jury could have understood each of [the prosecutor's] comments, not all of which were impermissible[.]" 373 Or 591, 607, 568 P3d 940 (2025). We analyzed each of the comments in context and concluded that none of them, "in

isolation or in combination," was obviously improper. *Id.* at 615. Accordingly, *Perez* did not address the central inquiry in *Chitwood*: whether the prosecutor's comments were "'so prejudicial as to have denied defendant a fair trial.'" *Id.* (citing *Chitwood*, 370 Or at 312).

Here, defendant argues that, for two reasons, the prosecutor's comments in closing argument denied him a fair trial by ringing a "bell of misdirection" that could not be unrung. First, they distorted the burden of proof by telling the jurors "that they must justify a not guilty verdict by explaining away the state's evidence and coming up with counterevidence in support of defendant's case." Second, by urging jurors to think about what their "loved ones" would think of their verdict, the prosecutor's comments urged the jury to base their verdict on something other than the evidence produced at trial. Defendant emphasizes the comments' emotional power and their timing, occurring immediately before the jury retired for deliberations. As noted earlier in this opinion, the Court of Appeals concluded that the comments did not deny defendant a fair trial, because, while "not optimal," they "did not confuse the jury as to which party had the burden of proof." *Federico*, 336 Or App at 492.

We explained in *Chitwood* that the right to have every element of a crime proven beyond a reasonable doubt "is every bit as fundamental and longstanding as the right to remain silent." 370 Or at 321. Similarly, the right to have a verdict based solely on the evidence produced at trial is "every bit as fundamental and longstanding" as those other rights. *See, e.g.*, *State v. Evans*, 344 Or 358, 362, 182 P3d 175 (2008) (the "touchstone of impartiality" is "the juror's ability to set aside any pre-existing opinions or impressions" and to decide the case based on the facts and law presented at trial); *Bratt v. Smith et al.*, 180 Or 50, 60, 175 P2d 444 (1946) (arguments that directly appeal to "passion and prejudice" are beyond the bounds of legitimate comment on the evidence). To that end, jurors are prohibited from consulting outside sources or discussing the case with anyone outside the courtroom. Here, the trial court instructed the jurors,

appropriately, not to talk about the case during the trial, even with "the people closest to you."

Those principles imply special obligations for prosecutors in our system of justice. Case law makes those obligations explicit. As the United States Supreme Court observed long ago, a prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all[.]" *Berger v. United States*, 295 US 78, 88, 55 S Ct 629, 79 L Ed 1314 (1935), *overruled on other grounds by Stirone v. United States*, 361 US 212, 80 S Ct 270, 4 L Ed 2d 252 (1960). As such, "while he may strike hard blows, he is not at liberty to strike foul ones." *Id.* Our own cases are in accord. *See Strain*, 374 Or at 791 ("[A]lthough a prosecutor has wide latitude to make arguments from the evidence, all of a prosecutor's arguments must comport with the constitutional protections afforded a criminal defendant at trial."); *Jones*, 279 Or at 63 ("While it is expected that a prosecuting attorney will be zealous in his efforts to convict a defendant believed by him to be guilty of a crime, it must also be remembered that the prosecuting attorney, as a representative of the state, owes a primary duty to see that all criminal defendants receive a fair trial.").

Here, the prosecutor's suggestions that jurors should think about how they would justify their verdict to "loved ones" and "people [they] care about" were antithetical to the principles underlying a fair trial. The purpose of a criminal trial, and of the rules of evidence and procedure that govern it, is to ensure that twelve jurors may as dispassionately as possible render a verdict based on the facts properly presented to them. To that end, the trial court correctly told jurors that they should render their verdict based on a "careful and impartial consideration of all the evidence," that they should weigh the evidence "calmly and dispassionately," and that they should "not allow bias, sympathy or prejudice any place in [their] deliberations."

Those instructions properly reminded jurors that there are legitimate and illegitimate bases for rendering a verdict, and that their obligation was to base their decision on the evidence rather than outside influences. It is

precisely because those instructions direct jurors to do what they may find unnatural and difficult that comments which contradict them are so harmful. The prosecutor's comments that jurors should think about how they would justify a not guilty verdict to their "loved ones" undermined the trial court's instructions and the authority of the court by urging jurors that they should be influenced by the very considerations that a trial is designed to exclude.

The state contends that the prosecutor's comments can be understood as a "figurative" way to encourage the jurors "to apply logic and reason to the trial evidence, and to conclude that the only viable verdict was one of guilt." We disagree. The prosecutor's comments expressly invoked jurors' "loved ones" and "people [they] care about." A prosecutor's comments can be obviously improper if they "direct[] the jury away from the facts toward emotion and risk of error." *Chitwood*, 370 Or at 320. In a criminal case involving allegations of sexual abuse by a teacher against a student— the type of case in which jurors' friends and family would have been likely to take great interest and have strong opinions—the prosecutor's comments directed jurors to imagine what their "loved ones" would think about the verdict at the very moment when it was most critical that jurors try to exclude those thoughts and focus dispassionately on the evidence. For those reasons, we conclude, as other courts have in similar circumstances, that those comments were so prejudicial as to deprive defendant of a fair trial.[6]

---

[6] Our conclusion aligns with the decision of the California Supreme Court in *People v. Shazier*, 60 Cal 4th 109, 331 P3d 147, 175 Cal Rptr 3d 774 (2014). In that case, the prosecutor told the jurors during closing rebuttal that they would "have to explain *** [to their friends and family] what [they had] been doing" during the trial. 60 Cal 4th at 143, 331 P3d at 171, 177 Cal Rptr 3d at 801 (ellipses and second brackets in *Shazier*). The prosecutor also engaged in a hypothetical conversation between jurors and nonjurors, illustrating the difficulty that jurors may have in explaining a not guilty verdict in such a conversation. 60 Cal 4th at 143-44, 331 P3d at 171-72, 177 Cal Rptr 3d at 801-03. The court rejected the state's argument that the conversation was simply a "metaphor" that encouraged the jurors to weigh the evidence and return a guilty verdict. 60 Cal 4th at 144-45, 331 P3d at 172, 177 Cal Rptr 3d at 803. The court explained that the prosecutor could have made that point without "allusions to a circumstance the jurors were expressly instructed to disregard—the potential community reaction to their verdict." *Id.* More decisively, the court explained that it could not countenance such arguments "[b]ecause the specter of outside social pressure and community obloquy as improper influences on the jurors' fairness and objectivity is so significant[.]" *Id.*

### III.   CONCLUSION

For the foregoing reasons, we conclude that the prosecutor's statements during defendant's cross-examination of J were sufficiently prejudicial under the circumstances that the trial court was required to grant defendant's motion for mistrial. As a separate and independent ground for reversal, we conclude that the prosecutor's comments during his closing rebuttal argument required a mistrial.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.